UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
                                             :
          v.                                 :    **MEMORANDUM AND ORDER**
                                             :    20-CR-548 (WFK)
                                             :
HERBERTH RODRIGUEZ and                       :
ELIAS MARTINEZ VILLANUEVA,                   :
                                             :
                                             :
          Defendants.                        :
-------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court are the Government's first and second motions in limine,[1] motion to preclude cross-examination of certain law enforcement witnesses regarding administrative findings and civil lawsuits, and motion to preclude references or cross-examination of two civilian witnesses regarding certain prior arrests, convictions, and other non-criminal conduct. Defendant Herberth Rodriguez ("Rodriguez") and Defendant Elias Martinez Villanueva ("Villanueva," together with Rodriguez, "Defendants") oppose the Government's motions on numerous grounds. For the reasons set forth below, the Government's motions are GRANTED IN PART AND DENIED IN PART.

## I.   BACKGROUND

The Court assumes the parties' familiarity with the allegations and factual background in this action.[2]

## II.   MOTION TO ADMIT RACKETEERING EVIDENCE

The Government seeks to admit racketeering evidence concerning: (1) incidents of violence with rival gang members; and (2) other illegal activity (e.g., production of fraudulent identification documents, extortion, drug trafficking, and the promotion of prostitution) intended to enrich the 18th Street Gang ("18th Street") and to support financially incarcerated 18th Street

---

[1] The Government's first motion in limine also provides background on the law concerning authentication of video recordings, although the Government does not move to authenticate any videos. For this reason, the Court does not address this portion of the Government's motion and reserves decision on any authentication issues for trial.

[2] The Court outlined pertinent allegations and facts in its Memorandum and Order denying Rodriguez's motions to suppress and to sever and addressing his requests for certain discovery material. *See* ECF No. 188.

members. *See* Government's Opening Brief in Support of First Motion in Limine (the "First

MIL") at 17–18, ECF No. 138.[3]

With respect to the first category of racketeering evidence, the Government proffers the

following specific instances of violence:

- An August 14, 2020 shooting between 18th Street members and a purported rival gang member. *Id.* at 23.
- An incident around Halloween 2019 where Rodriguez and other 18th Street members confronted rival gang members, resulting in the beating of one rival member and the attempted shooting of another rival member. *Id.* at 24;
- A mid-2020 incident where Villanueva used a bat to chase and "menace[]" an individual whom he believed tried to rob a fellow 18th Street member. *Id.*;
- A mid-August 2020 incident where Rodriguez and other 18th Street members assaulted a group of black males whom they believed were rival gang members, resulting in at least one shot being fired at the purported rivals. *Id.*;
- A September 2020 incident where Rodriguez shot at an individual multiple times within 18th Street territory near Rodriguez's residence. *Id.* at 25; and
- An incident on an undisclosed date where Rodriguez fired a gun at members associated with Vatos Locos, a rival gang. *Id.*

The Government also intends to introduce evidence of 18th Street members hiding firearms and

other weapons in bags or backpacks within 18th Street territory for purported easy access in the

event rival gang members intruded their territory. *Id.* at 25–26.

With respect to the second category of racketeering evidence, the Government seeks to

admit evidence of the following 18th Street activities:

- The use, attempted use, and conspiracy to use narcotics trafficking of cocaine and marijuana. *Id.* at 26.
- Production of fraudulent identification documents such as driver's licenses, green cards, and Occupational Safety and Health Administration ("OSHA") cards. *Id.*
- Extortion of brothel owners for cash payments or "rent," for which failure to pay resulted in violent assault or death. *Id.* at 26–27.
- Prostitution. *Id.* at 26.

---

[3] Citations are to the docket in *United States v. Rodriguez et al.*, 20-CR-548. Pincites refer to the ECF page numbers assigned to a filing, where available, and where no ECF heading is present, to the page numbers listed in the original filing.

Rodriguez challenges admission of all racketeering evidence outlined above. *See* Rodriguez's Brief in Opposition to Government's First Motion in Limine ("Rodriguez's Opp. Br.") at 6–8, ECF No. 144. Villanueva only challenges the admission of the first three instances of violence within the first category of racketeering evidence.[4] *See* Villanueva's Brief in Opposition to Government's First Motion in Limine at 3 ("Villanueva's Opp. Br."), ECF No. 145.[5]

The Court grants the Government's motion and admits the proffered racketeering evidence, subject to a limiting instruction directing the jury to consider the evidence only for the purpose of evaluating: (1) the existence, organization, or nature of 18th Street as an enterprise; (2) whether there was a pattern of racketeering activity; (3) whether there was opportunity to commit the charged offenses; and (4) whether there was motive to commit the offenses.

## A.    Legal Standards

### 1.    Admissibility of "Other Acts" Evidence Under Rule 404(b)

In general, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Yet this evidence of uncharged offenses or other acts may be admitted for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

Despite this restriction Rule 404(b) places on the admission of evidence of uncharged criminal activity, said evidence "is not considered *other crimes evidence* under" the rule—and is

---

[4] In his brief, Villanueva expressly opposes the first three acts of violence, although he goes on to argue the "remaining acts of firearm use involving Rodriguez . . . should be precluded pursuant to Rule 403." Villanueva's Opp. Br. at 6. In any event, the Court analyzes all six instances of violence given Rodriguez's challenge to all the evidence proffered.

[5] Villanueva filed a second opposition brief identical to the first. *See* ECF No. 146.

therefore admissible—"if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997)) (emphasis added).

### 2. Relationship Between Rule 404(b) and Racketeering Offenses

In the context of racketeering offenses, the U.S. Court of Appeals for the Second Circuit held evidence of uncharged offenses by members of the alleged enterprise may constitute "direct evidence of the charged offense," and therefore does not implicate the restrictions of Rule 404(b). *United States v. Mejia*, 545 F.3d 179, 206 (2d Cir. 2008) (admitting evidence of uncharged narcotics trafficking to show existence of a racketeering enterprise in which defendants participated). Rule 404(b) does not apply when direct evidence of an offense is at issue. *See id.* Specifically, the Circuit determined it is "well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003). This is because evidence of these uncharged offenses and other acts can provide "evidence of the nature of the enterprise, which, in turn, can prove the relatedness and continuity essential to a pattern, thereby helping to establish that the defendant's own acts constitute a pattern within the meaning of RICO." *United States v. Basciano*, 599 F.3d 184, 206–07 (2d Cir. 2010) (quoting *United States v. Indelicato*, 865 F.2d 1370, 1384 (2d Cir. 1989)) (internal quotation marks omitted).

It is irrelevant whether all charged defendants participated in the evidence of uncharged criminal activity for purposes of admissibility. *See Mejia*, 545 F.3d at 206 (noting "evidence of

4

uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible to prove an essential element of the RICO crimes charged—the existence of a criminal enterprise in which the defendants participated") (citing *United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007) (affirming admission of uncharged murders committed by non-defendant enterprise members)).

### 3. Exclusion of Prejudicial Evidence Under Rule 403

However, even if this evidence is not precluded under Rule 404(b), it may still be deemed inadmissible under Rule 403. Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

When evaluating the application of Rule 403 to racketeering cases, the Second Circuit recognized, although "a likelihood that evidence proving the existence of the enterprise through its acts will involve a considerable degree of prejudice, . . . the evidence may be of important probative value in proving the enterprise." *Matera*, 489 F.3d at 121 (citing *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir.1991)).

The district court has broad discretion over evidentiary issues, including those under Rules 404(b) and 403. *United States v. Wong*, 40 F.3d 1347, 1378 (2d Cir. 1994) ("A district court has broad discretion regarding the admissibility of evidence and its rulings will be disturbed only for an abuse of that discretion."); *United States v. Awadallah*, 436 F.3d 125, 134 (2d Cir. 2006) (noting the "broad discretion afforded [to the district court] on evidentiary questions").

5

### B.    Application

#### 1.    Instances of Violence

The uncharged instances of violence are admissible either as direct evidence of the charged racketeering offenses, or as being inextricably intertwined with evidence relating to the charged racketeering offenses Defendants presently face. Thus, Rule 404(b) does not apply. *See Carboni*, 204 F.3d at 44.

Rodriguez is charged with, *inter alia*, racketeering, conspiracy to distribute and possess with intent to distribute cocaine and marijuana, conspiracy to commit murder in-aid-of racketeering, murder in-aid-of racketeering, and possessing, brandishing, and discharging a firearm during a crime of violence. *See* Fourth Superseding Indictment (the "Super. Indict") at ¶¶ 12–21, ECF No. 10. Villanueva is charged with, *inter alia*, conspiracy to commit murder in-aid-of racketeering, murder in-aid-of racketeering, and possessing, brandishing, and discharging a firearm during a crime of violence. *Id.* at ¶¶ 17–21.

The uncharged offenses the Government proffers are linked to 18th Street or conduct by 18th Street members, including the gang's goals of promoting and enhancing its prestige, reputation, and position relative to other rival gangs, preserving 18th Street's territory and criminal ventures, keeping victims and rivals in fear of 18th Street, and enriching 18th Street and its members. *See id.* at ¶ 6. Four of the six proffered instances of violence concern shootings or assaults perpetrated by 18th Street members in response to—whether actual or perceived— threats from rival gang members.[6] *See supra* at 2. One of the incidents concerned Rodriguez

---

[6] Villanueva argues the jury should not be told one of the incidents occurred on Halloween because it would have the "tendency to confuse the jury to believe that 18th Street was generally and especially violent on October 31." Villanueva's Opp. Br. at 5. The Court disagrees. The Government proffers this event took place "on or about" Halloween in 2019. First MIL at 24. The general timeframe of the shooting is important for the jury to understand the entire chronology of the events at issue Even if the Government was precluded from mentioning Halloween explicitly and instead stated it was "on or around

6

shooting at another individual within 18th Street's territory around Halloween, *see supra* at 2, which is indicative of the gang's purpose of defending its territory from perceived threats.

Villanueva argues the Government has not proffered evidence linking the Halloween shooting to 54 Tiny Locos' territory specifically. Villanueva's Opp. Br. at 5. This conflates 18th Street (the actual enterprise with which Defendants are alleged to have associated) with a subset of the enterprise. The Fourth Superseding Indictment's allegations concern Defendants' association with 18th Street as a whole, *see generally* Super. Indict., not just the 54 Tiny Locos, and for this reason, Villanueva's argument is unavailing. As for the separate incident in which Villanueva chased an individual with a bat after a perceived attempted robbery of Villanueva's fellow 18th Street member, *see supra* at 2, this goes towards the association or close relationship among and between 18th Street members. These instances of violence support the existence of a criminal enterprise and a pattern of racketeering. *See Baez*, 349 F.3d at 93; *Basciano*, 599 F.3d at 206–07.

The same is true of the numerous activities the Government purports 18th Street engaged in to enrich the gang and its members, such as: narcotics trafficking of cocaine and marijuana, production of fraudulent identification documents, extortion, and prostitution. *See supra* at 2. This evidence of uncharged criminal activity goes towards the nature and operations of 18th Street, which bear directly on the enterprise's existence and the elements present in the racketeering and "in-aid-of-racketeering" offenses Defendants are charged with. *Basciano*, 599 F.3d at 206–07.

---

October 31, 2019," the jury will know the shooting took place around Halloween. The probative value of admitting the date of the shooting would not be substantially outweighed by a danger of confusing the jury.

Moreover, some of the uncharged offenses and activities are inextricably linked to the narcotics conspiracy and racketeering offenses Rodriguez has been charged with; specifically, conspiracy to distribute and possess with intent to distribute cocaine and marijuana, and the predicate narcotics distribution conspiracy underlying his racketeering charge. *See* Super. Indict. at ¶¶ 11, 16. The Government proffers evidence 18th Street "used, attempted to use and conspired to use narcotics trafficking" of controlled substances such as cocaine and marijuana. First MIL at 26. Evidence of an existing conspiracy to distribute—and the actual distribution of—cocaine and marijuana are inextricably linked to, if not arising out of the same events as, the narcotics conspiracy charge and predicate RICO charge against Rodriguez.

The same is true of the August 2020 shooting proffered by the Government, *see supra* at 2, because ballistic evidence linked the firearm utilized in the shooting to the October 10, 2020 shooting Rodriguez is charged with committing in the instant case. Villanueva argues the ballistic evidence may "well have had nothing to do with the shooting" at issue. Villanueva's Opp. Br. at 4. At the very least, this evidence connects a firearm Rodriguez is alleged to have used in the October 10th shooting with 18th Street. The Court holds this connection sufficient to demonstrate its admissibility.

To the extent Defendants challenge admission of these uncharged offenses on the grounds they did not participate in the offenses or acts, *see, e.g.*, Villanueva's Opp. Br. at 3–4 ("Neither Rodriguez nor Villanueva were present"), the Second Circuit has held "evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible to prove an essential element of the RICO crimes charged—the existence of a criminal enterprise in which the defendants participated." *Mejia*, 545 F.3d at 206 (internal citation omitted). *Mejia* makes clear both

8

uncharged offenses committed by defendants *or* other members of an enterprise are admissible to prove essential RICO elements. *See also Matera*, 489 F.3d at 120 (affirming admission of uncharged murders committed by non-defendant enterprise members).

Even assuming, *arguendo*, Rule 404(b) applies, the proffered evidence would still be admissible for purposes other than to prove propensity. For example, the evidence would be admissible to prove Defendants' motive[7] or opportunity to commit the acts at issue in this action, e.g., the purpose of harming rival gang members and the opportunity to do so through access to firearms and weapons possessed by, or stashed by, 18th Street members in locations throughout 18th Street territory. Fed R. Evid. 404(b)(2); *see United States v. Castro*, 659 F.Supp.2d 415, 421 (E.D.N.Y. 2009) (Spatt, J.) ("Even if this evidence was not relevant to establishing that MS–13 is an enterprise, it would still be admissible under Fed. R. Evid. 404(b) to show Castro's motive: in both the Elk Street Shooting and the charged shootings, he sought to harm members of rival gangs; and proving opportunity."); *United States v. Lauria*, 541 F. Supp. 3d 311, 317 (S.D.N.Y. 2021) (Roman, J.) (noting the Second Circuit has "repeatedly held" "evidence that the Defendant had the opportunity to access firearms" around the time of the offense is an "appropriate purpose").

Finally, the Court finds the probative value of the proffered evidence would not be "substantially outweighed by a danger" of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed R. Evid. 403. There is no indication the evidence would be so needlessly cumulative or wasteful of time

---

[7] Rodriguez claims the Government must also show the uncharged crimes furthered the racketeering conspiracy's goals. Rodriguez's Opp. Br. at 7 (citing cases). The cases Rodriguez cites stand for the proposition that the "furtherance" requirement applies to the *instant offenses a defendant has been charged with*. In any event, the Court finds the proffered evidence are sufficiently linked to 18th Street to show they were committed in furtherance of the enterprise's purposes as previously determined. *See supra* at § II.

as to require exclusion under Rule 403. Trial has not yet begun, and the Court reserves any further consideration of the extent to which any evidence would be cumulative or waste time. And although the Court understands there is "a likelihood that evidence proving the existence of the enterprise through its acts will involve a considerable degree of prejudice," the Court is reminded by *Matera* of how, regardless, "the evidence may be of important probative value in proving the enterprise." *See supra* at 5 (citing *Matera*, 489 F.3d at 121). Moreover, given Defendants are charged with, *inter alia*, murder in-aid-of racketeering, the uncharged offenses and other acts are not "more inflammatory than the charged crime" so as to require exclusion. *Baez*, 349 F.3d at 94 (citing *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir.1999)).

For the foregoing reasons, the Court finds the proffered racketeering evidence is admissible. However, the Court will issue a limiting instruction[8] directing the jury to consider the evidence only for the purpose of evaluating: (1) the existence, organization, or nature of 18th Street as an enterprise; (2) whether there was a pattern of racketeering activity; (3) whether there was opportunity to commit the charged offenses; and (4) whether there was motive to commit the offenses. To the extent the Government seeks to introduce instances of uncharged offenses or other acts at trial not proffered above, Defendants may raise any additional objections.

## III.  MOTION TO ADMIT STATEMENTS BY DEFENDANTS AND OTHER 18TH STREET MEMBERS

The Government also seeks to admit numerous statements made by Defendants and other alleged 18th Street members. Specifically, the Government intends to introduce statements regarding the October 10th and November 1st shootings and statements concerning "other racketeering activity, including but not limited to violent acts, narcotics trafficking, the

---

[8] Rodriguez himself proposed a limiting instruction as a method of limiting prejudice from introducing the proffered evidence. Rodriguez's Opp. Br. at 7.

10

production of fraudulent identifications, extortion, the promotion of prostitution and other crimes." First MIL at 28.

Villanueva does not substantively respond to the Government's motion except to argue "[t]o the extent the Court precludes evidence of uncharged acts as per the argument set forth above as to Motion I, statements regarding those acts should be precluded." Villanueva's Opp. Br. at 6. Rodriguez raises numerous challenges or limitations on introducing the proffered statements, including objecting to the statements to the extent: (1) the rule of completeness requires allowing Defendants to introduce other portions of statements introduced by the Government; (2) *Bruton* and *Crawford* issues arise; (3) the co-conspirator requirements of Rule 801(d)(2)(E) are not met; (4) Rule 403 precludes admission of any statements; or (5) the Government attempts to use statements it represents are introduced for the effect on the listener, for the purpose of proving the truth of the matter asserted. *See* Rodriguez's Opp. Br. at 10–14.

Given the exact statements at issue are not before the Court, any decision on this issue would be premature. The Court therefore denies the Government's motion and reserves decision on this issue until the Government presents the statements at issue, whether prior to or at trial.

## A.    Legal Standards

Rule 802 prohibits the admission of hearsay evidence unless otherwise provided by federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed R. Evid. 802. Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted in the statement. *See* Fed R. Evid. 801(c). By extension, statements not offered for the truth of the matter asserted are *not* barred by the rule against hearsay. *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). Additionally, Rule 801 expressly designates

certain categories of statements—which would otherwise fall within the definition of hearsay—as non-hearsay and thus admissible. *See* Fed R. Evid. 801(d).

Pertinent to the Government's motion is Rule 801(d)(2), which provides statements "offered against an opposing party" are not hearsay. Fed R. Evid. 801(d)(2). Opposing party statements include those made by the party themselves or statements made by the "party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(A), (E). Where part of a statement is introduced by a party, the non-offering party may "require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The non-offering party may invoke Rule 106 notwithstanding a hearsay objection. *Id.*

Certain requirements must be met before co-conspirator statements are admissible under Rule 801(d)(2)(E). Rule 801(d)(2)(E) requires: (1) the existence of a conspiracy; (2) membership in the conspiracy by the defendant and the co-conspirator who made the statement at issue; and (3) the statement was made during the course of, and in furtherance of, the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). The offering party—here, the Government—must establish these requirements by a preponderance of the evidence to admit co-conspirator statements pursuant to Rule 801(d)(2)(E). *Id.* at 176. However, a court may admit a co-conspirator statement on a conditional basis if the foundational requirements are established by the later submission of the necessary evidence. *See* Fed R. Evid. 104(b); *United States v. Romanello*, 22-CR-194, 2023 WL 8283435, at *2 (E.D.N.Y. Nov. 27, 2023) (Komitee, J.) (quoting *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993)).

Yet even if proffered statements are admissible under Rule 801, they are still subject to the same Rule 403 analysis outlined above. *See supra* at 5.

12

Separate from the Federal Rules of Evidence, courts must ensure a defendant's rights under the Sixth Amendment's Confrontation Clause are not violated. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him[.]"). The Confrontation Clause "prohibits the admission of out-of-court testimonial statements against a criminal defendant, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007) (citing *Crawford v. Washington*, 541 U.S. 36 (2004)) (internal quotation marks omitted). The Supreme Court, applying *Crawford*, held confessions made by a defendant inculpating their non-testifying co-defendant are inadmissible under the Confrontation Clause notwithstanding a limiting instruction to the jury. *See Bruton v. United States*, 391 U.S. 123, 137 (1968); *see also United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009) ("[W]here a non-testifying defendant's confession specifically inculpates a co-defendant, the risk that the jury will not, or cannot, follow instructions to limit its consideration of the evidence only as against the declarant is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.").

However, a *Bruton* violation can be avoided through "redaction and substitution adequate to remove the overwhelming probability that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant." *Id.* at 60 (internal quotation marks omitted). While neutral references to the defendant may suffice, redactions in the non-testifying defendant's confession inserting obvious placeholders for the defendant—such as "deleted," a symbol, or a blank space—will not cure the violation even when coupled with an appropriate jury instruction. *See Gray v. Maryland*, 523 U.S. 185, 194–95 (1998); *c.f. Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (No *Bruton* violation where

13

reference to the existence of the defendant was eliminated completely from the admitted confession of the non-testifying defendant); *c.f. Samia v. United States*, 599 U.S. 635, 653 (2023) ("[T]he neutral references to some 'other person' were not akin to an obvious blank or the word 'deleted'" in *Gray*).

## B. Application

The Government's motion on this issue and the challenges raised to the statements are not readily disposable. Although the Government has described the general topics to which the statements at issue will relate, the specific statements themselves have not been provided to this Court. Trial has not yet begun, rendering it inappropriate for the Court to speculate as to the exact contents of the statements at issue. Thus, it is premature to rule on this issue and so the Court reserves decision until the Government informs the Court of the statements at issue prior to or at trial. *See United States v. Basciano*, 03-CR-929, 2006 WL 385325, at *1 (E.D.N.Y. Feb. 17, 2006) (Garaufis, J.) (finding issue of admissibility of co-conspirator statements premature on motions *in limine* and reserving decision until statements were introduced at trial); *United States v. Solla*, 19-CR-740, 2021 WL 5756394, at *4 (S.D.N.Y. Dec. 2, 2021) (McMahon, J.) (same).

Nevertheless, the Court cautions the Government to avoid issues arising under *Bruton* or *Crawford* when introducing at trial statements made by a non-testifying defendant which implicate their co-defendant, or testimonial statements made by unavailable witnesses Defendants have not had the opportunity to examine.

## IV. MOTION TO ADMIT CERTAIN YOUTUBE VIDEOS

The Government next seeks to admit three YouTube videos—with accompanying audio and Spanish-to-English translations—purportedly made by 18th Street members and posted in March, May, and November of 2020. First MIL at 35–36. These videos allegedly depict, *inter*

14

*alia*, 18th Street members, some of which include Defendants,[9] 18th Street territory, and 18th Street hand signs, tattoos, clothing, and graffiti. *Id.* at 36. The Government argues the videos describe and depict "18th Street, the role of the members, threats of violence to rivals and others who start problems with 18th Street, threats of retaliatory violence, and rivalries between 18th Street and MS-13." *Id.*

Defendants challenge admission of the videos on the grounds they are irrelevant and run afoul of Rules 404(b) and 403. *See* Rodriguez's Opp. Br. at 14–16; Villanueva's Opp. Br. at 7.

The Court has reviewed both the videos and the lyrical translations provided by the Government. For the reasons described below, the Court finds portions of the audio and translations admissible, and other portions of the same inadmissible.

A.    **Legal Standards**

The same legal standards described above with respect to Rules 404(b) and 403, *see supra* at 3–5, apply to the proffered music videos. As for relevance, the bar is "very low." *See Belvin v. Electchester Mgmt., LLC*, 635 F.Supp.3d 190, 197 (E.D.N.Y. 2022) (Garaufis, J.) (citing *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012)). Evidence is relevant as long as "it has *any* tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed R. Evid. 401 (emphasis added).

Various courts in this circuit have had occasion to apply Rules 404(b) and 403 to music videos.[10] The Second Circuit previously held "[r]ap lyrics and tattoos are properly admitted . . .

---

[9] The Government and Rodriguez disagree as to whether Defendants appear in any of the videos. *See* First MIL at 36; Rodriguez's Opp. Br. at 14. This dispute is more appropriately a topic for cross-examination and Defendants are free to inquire at trial as such.

[10] In its brief, the Government cites *United States v. Miller*, 20-CR-331 (E.D.N.Y. May 7, 2024) (DeArcy Hall, J.). First MIL at 41. Although a motion was made regarding the admission of rap lyrics, this Court did not locate a written decision "admitting rap lyrics . . . that included 'names, places, and conduct that tracks the indictment.'" *See id.* For this reason, the Court does not factor *Miller* into its analysis.

15

where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015). However, determining how to strike this balance is not always immediately clear. *See United States v. Jordan*, 714 F.Supp.3d 158, 162–63 (E.D.N.Y. 2024) (DeArcy Hall, J.). Importantly, a court must be "cognizant that hip hop is fundamentally an *art form* that traffics in hyperbole, parody, kitsch, dramatic license, double entendres, signification, and other literary and artistic conventions to get it[s] point across."[11] *Id.* at 163 (citing Michael Eric Dyson, Forward, *That's the Joint!: The Hip-Hop Studies Reader*, xii (Forman & Neal eds. 2004)) (internal quotation marks omitted) (emphasis in original). The Rule 403 analysis is complicated by the general understanding that rap lyrics expressed in this art form are "likely to be fictional braggadocio," containing embellishments, hyperboles, and wholly fabricated iterations of criminal acts. *See United States v. Ayers*, 20-CR-239, 2024 WL 1158686, at *7 (E.D.N.Y. Mar. 18, 2024) (Cogan, J.).

Courts in this circuit have thus developed a rule-of-thumb for evaluating the admissibility of rap lyrics and videos, permitting this evidence when there is a "specific factual nexus between the content of rap music and the crimes alleged." *Jordan*, 714 F.Supp.3d at 164; *see also Ayers*, 2024 WL 1158686, at *7.

## B.    Application

As a threshold matter, the Court finds the videos and lyrics are relevant. The Government's purposes for introducing the videos are to show the existence of 18th Street and the association of its members, the methods and means of 18th Street, 18th Street's objectives, and the pattern of racketeering activity 18th Street is engaged in. Given Defendants are charged

---

[11] For an insightful summary of the history, content, and cultural impact of rap, refer to the Honorable LaShann DeArcy Hall's opinion in *Jordan*, 714 F.Supp.3d at 160–162.

16

with committing offenses in connection with 18th Street and its objectives, the videos plainly clear the low bar of relevancy addressed in *Belvin.* 635 F.Supp.3d at 197.

For related reasons, the Court finds the videos and lyrics do not run afoul of Rule 404(b). Direct evidence of the existence of an enterprise and a pattern of racketeering does not implicate Rule 404(b). *See supra* at 3–5. The videos and lyrics go towards establishing both of these essential elements of the charges asserted against Defendants. Moreover, even if the videos and lyrics implicated Rule 404(b), the videos would be admissible for other valid purposes such as showing Defendants' motive and opportunity. *See supra* at 3–5.

However, many of the proffered rap lyrics in this case are of a generic nature reflecting the type of "vapid posturing" insufficient to establish the specific factual nexus with the charged offenses. *See Ayers*, 2024 WL 1158686, at *7; *Jordan*, 714 F.Supp.3d at 165–66. For example, the following proffered lyrics are too general and vague to be admissible under Rule 403:

- "There's no truce here, and definitely no equals. If you cross paths with this pirate, you're done for." First MIL at 42;
- "I have my scapulary and insane backup for any rival punk who thinks he's too tough[.]" *Id.*;
- "Only flow I have for you, I roll up in your hood with a straight out fuck you. I don't wanna front like I'm cool, 'cause I'm not. But if I see you on the turf, you know I'm gonna shoot." *Id.* at 42–43; and
- "[I]f you shoot, I'm quick with the assist[.]" *Id.* at 43.

By contrast, the following examples are specific enough in their references to 18th Street as an enterprise, the gang's pattern of racketeering, and its rivalry with MS-13 for admissibility:

- "[W]e're not leaving, you already know we rep and die for 82. We multiply. I've seen big dogs rise up and fall down. Killing MS has become my job." *Id.* at 42;
- With a .38, I roll solid, reppin' X8, so the whole world knows 18 is here. My gun and my balls are ready for my enemy if he wants to test me. Pack of MS assholes[.]" *Id.*; and
- "I got into a world of pussies, fakes, and traitors, 'till I earned my stripes with my 18th street homies." *Id.* Ex. A-1 at 6, ECF No. 138-1.

As for the video content of the proffered evidence (i.e., separate from the audio lyrics and translations), the Court finds most of the images sufficiently specific as to 18th Street, its territory, its members and their associations, and the possession of weapons among the gang so as to be admissible under Rule 403. However, to the extent any inadmissible lyrics such as those outlined above appear as text in the videos, they too are inadmissible.

The Court has reviewed the parties' other arguments and finds them unpersuasive. For the foregoing reasons, the Court partially grants the Government's motion with respect to the YouTube videos and partially denies the motion. The Court directs the Government and Defendants to confer, in light of the above guidance, regarding the appropriate excerpting of any audio and accompanying translations in accordance with this Court's opinion. Any video clips in which inadmissible lyrics appear as text are similarly inadmissible. To the extent there are any disagreements among the parties, Defendants may raise objections at trial.

## IV.    MOTION TO ADMIT EVIDENCE REGARDING RODRIGUEZ'S STATEMENTS MADE TO, AND USE OF VIOLENCE AGAINST, CW-1

The Government intends to introduce testimony regarding Rodriguez's alleged physical and sexual abuse of CW-1, including instances when Rodriguez punished CW-1 by beating her, and sexually assaulted her. First MIL at 46. Rodriguez opposes introduction of the evidence, arguing it constitutes impermissible propensity evidence under Rule 404(b) and is too inflammatory and prejudicial under Rule 403. *See* Rodriguez's Opp. Br. at 17. Villanueva joins these arguments. Villanueva's Opp. Br. at 11.

The Court grants the Government's motion to allow testimony regarding the physical and sexual abuse of CW-1. However, the Court cautions the Government to circumscribe the testimony so as to not overwhelm the trial with discussion of these instances of violence.

18

### A.    Legal Standards

The principles described above regarding Rules 404(b) and 403 apply with equal force to this issue. *See supra* at 3–5.

### B.    Application

The Government contends, and Defendants agree, CW-1's testimony will be central at trial. *See* First MIL at 36; Government's Reply Brief ("Gov't Reply Br.") at 9, ECF No. 150; Rodriguez' Opp. Br. at 17 ("We acknowledge that CW-1's credibility will be central (she is a key cooperating witness)))." As a result, CW-1's credibility will be a critical issue. First MIL at 48; Rodriguez' Opp. Br. at 17 ("If CW-1 took part in the murder plot, the defense will likely question whether she had her own motives or whether she is minimizing her role."). For these reasons, the Court agrees instances of violence Rodriguez inflicted upon CW-1 are important and necessary for the jury to hear in order to evaluate why CW-1 "came to conspire with the defendant in the charged conduct and his reasons for trusting that she would assist him and not report him to law enforcement." First MIL at 48. Given CW-1's alleged role in the charged offenses and the connection between CW-1 and Rodriguez's relationship to the same offenses, the testimony will serve to provide "background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (citing *United States v. Roland-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)). For this reason, Rule 404(b) does not preclude the testimony.

Neither is the testimony's probative value substantially outweighed by a danger of prejudice under Rule 403. Given CW-1's testimony is central to the case, the nature of CW-1 and Rodriguez's relationship and any testimony explaining why CW-1 may have assisted Rodriguez in the charged offenses is substantially probative to understanding how the events

19

unfolded. *See United States v. Kelly*, 07–CR–374, 2008 WL 5068820, at *4 (E.D.N.Y. July 10, 2008) (Johnson, J.) (admitting evidence of the defendant's violence against, and sexual relationship with, government witnesses to "present evidence that punishments meted out by a defendant can create a climate of fear that [is] sufficient to cause [the victim] to perform labor or services against her will") (internal quotation marks omitted).

Rodriguez cites to *United States v. Colombo*, yet the case is inapposite because evidence defendants sexually assaulted one of the robbery victims was not being introduced to shed light on any assistance the victim provided in the charged offenses. 869 F.2d 149, 153 (2d Cir. 1989). Moreover, the Government represented it will only present "limited evidence" of the physical and sexual abuse inflicted by Rodriguez, rather than elicit "each and every instance of abuse." Gov't Reply Br. at 8; *see also id.* at 9 ("[T]he government intends to elicit only minimal, basic facts that would assist the jury in understanding the nature of the relationship.").

The Court will also impose a limiting instruction, as Rodriguez suggests, directing the jury to consider the evidence only for the limited purpose of understanding CW-1's relationship with Rodríguez rather than proof of Rodríguez's bad character or propensity to commit the charged crimes. *See* Rodriguez's Opp. Br. at 20. If Defendants believe the testimony elicited goes beyond the limited and circumscribed presentation the Government represents in its briefing, they are free to object at trial. For the foregoing reasons, the Court grants the Government's motion on this issue.

## V.    MOTION TO ADMIT AUTOPSY IMAGES AND BODY-WORN CAMERA FOOTAGE

The Government next seeks to admit a "limited number of autopsy photographs depicting the murder victim's wounds, as well as limited body-worn camera footage depicting the crime scene after the shooting." First MIL at 50. The camera footage captures the scene after Diego

20

Vanegas Vasquez's shooting, which depicts the "victim after he was shot and the vehicle that the victim was traveling in when shot, including damage to the vehicle." *Id.* at 51. The footage also captures police officers' discussion of "shell casings recovered at the scene, damage to the vehicle, and the use of a motorcycle or scooter used by the perpetrator." *Id.*

Rodriguez argues no "autopsy photographs [should] be shown to the jury unless absolutely necessary—and even then, only sanitized ones," due to their potential prejudicial effect. Rodriguez's Opp. Br. at 20. Similarly, Rodriguez requests no body-worn camera footage be shown or, alternatively, for any footage to "be edited to remove any extreme gore or distressing audio, and that it be stopped at an appropriate point." *Id.* at 21. Villanueva raises similar arguments for limiting the autopsy photographs and camera footage. *See* Villanueva's Opp. Br. at 11–12. However, Villanueva also raises hearsay—and seemingly Confrontation Clause—objections to the camera footage based on statements purportedly made by an eyewitness of the shooting and verbally recounted by officers on the footage. *Id.* at 12.

For the reasons discussed below, the Court grants the Government's motion to the extent it seeks to admit a limited number of autopsy photographs and body-worn camera footage, but reserves decision on introducing audio from the footage because the parties have failed to describe with sufficient specificity the statements at issue.

## A. Legal Standards

"[T]he Second Circuit has made clear that the graphic or disturbing nature of a photograph alone is not enough to render it inadmissible." *United States v. Salim*, 189 F.Supp.2d 93, 98 (S.D.N.Y. 2002) (Batts, J.) (citing *United States v. Velazquez*, 246 F.3d 204, 210–211 (2d Cir. 2001); *see also United States v. Osborne*, 739 Fed.Appx. 11, 18 (2d Cir. 2018) (summary order) ("The fact that the photos might have been graphic does not render them unfairly

prejudicial under Rule 403[.]"). No reason has been raised why this same principle should not apply to body-worn camera footage.

As for statements contained in body-worn camera footage, the same hearsay principles discussed above. *See supra* at 11–13.

### B.    Application

With respect to the autopsy photographs, the Government has already represented it will "limit the number of autopsy photographs it intends to offer in order to minimize any potential prejudice and ensure that the images are not cumulative of one another or other evidence." First MIL at 50 n.14. The Government intends to use only a small fraction of the 250 autopsy photographs taken to "corroborate the Medical Examiner's testimony and to aid the jury in understanding complex medical evidence about the nature and cause of Vanegas Vásquez's death." Gov't Reply Br. at 10. Similarly, the Government intends to introduce only limited body-worn camera footage. First MIL at 51. These representations are in line with Defendants' requests and are sufficient to comply with Rule 403. If Defendants believe the photographs and videos offered at trial overstep the bounds of Rule 403, they are free to raise appropriate objections then.

With respect to the body-worn camera footage, the Court is not yet able to evaluate fully Villanueva's hearsay objections to the statements made, specifically those regarding the alleged scooter used in the shooting. None of the parties have directed the Court to the specific body camera footage at issue or the specific statements challenged. It is thus premature to come to a decision regarding the hearsay issue and so the Court reserves judgment on the Government's motion to admit the audio from the footage until the Government informs the Court of the statements at issue prior to or at trial.

## VI.    MOTION TO ADMIT ANTICIPATED VIDEO COMPILATIONS

The Government also seeks to use or to admit multiple illustrative aids and video compilations summarizing hours of video surveillance footage.  First MIL at 52, 56.  The video compilations are drawn from hours of underlying surveillance footage.  *Id.*  The Government also anticipates making annotations, including zooms, arrows, circles, insets of publicly available maps, and real-time clocks to correct underlying time stamps in the videos.  *Id.*

Rodriguez does not object to the use of illustrative aids or video compilations as long as the Government complies generally with Rules 1006, 107, and 403.  Rodriguez's Opp. Br. at 21.  Villanueva objects to the use of annotations in the video compilations as inadmissible hearsay.  Villanueva's Opp. Br. at 12.

### A.    Legal Standards

The definition of hearsay evidence was previously outlined above "as an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Supra* 11–12 (citing Fed. R. Evid. 801(c)).  In this context, a statement is not required to be an oral assertion to qualify as hearsay.  Instead, the word "statement" also includes any "written assertion[] or nonverbal [assertive] conduct" made by a person.  *See* Fed. R. Evid. 801(a).  If the statement was made "out-of-court," it was not made during the trial or any other proceeding within the given action.  *See* Fed. R. Evid. 801(c)(1).

Rule 1006 permits a court to admit, as evidence, a "summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence." Fed R. Evid. 1006(a).  If a party is permitted to introduce a compilation under Rule 1006, they must "make the underlying originals or duplicates available for examination or

23

copying, or both, by other parties at a reasonable time and place." Fed R. Evid. 1006(b).  A

court may order the proponent to produce the underlying originals in court.  *Id.*

The principles discussed above regarding Rule 403 apply with equal force to this issue.

*See supra* at 5.

### B.    Application

The written time stamps, locations, and maps added to the compilation videos qualify as

statements under Rule 801.  *See* Fed. R. Evid. 801(a); *see United States v. Fuller*, 761 F.Supp.3d

125, 132 (D.D.C. 2025) (Kollar-Kotelly, J.) (holding time stamps, location stamps, and maps

added to montage exhibits constituted hearsay).  Even assuming this evidence initially

constitutes out-of-court statements offered for their truth, the Government has represented,

"through either testimony or stipulation, the locations of the surveillance cameras and any time

discrepancies" will already be in evidence.  Gov't Reply Br. at 10.  These specific in-court

statements will thus not qualify as inadmissible hearsay.  *See* Fed R. Evid. 801(c)(1).  It is

unclear whether the Government also intends to add insets of maps to the video compilations; to

the extent it does, these maps must themselves be admissible or otherwise admitted into the

record to be presented in the video compilations.

As for any zooms, arrows, circles, and highlighting, the Court is not persuaded these

constitute "statements" as contemplated by Rule 801.  At most, the Court views zooms, arrows,

circles, and highlighting as visual aids for the jury when reviewing the underlying surveillance

video; these visual aids do not constitute any specific assertions by the Government or nonverbal

conduct intended as an assertion offered to prove the truth of the matter.  Indeed, Villanueva has

not offered any indication of what truth value these visual aids hold.  *See generally* Villanueva's

Opp. Br.  Villanueva's reliance on *United States v. Fuller* is inapposite, given the authors of the

videos in the case "intended the editorial choices evident in the montages to convey that the various pieces of media were related" by positioning aerial maps or congressional records alongside video clips.  761 F.Supp.3d at 133–34.

To the extent Villanueva contends the act of compiling the videos will "favor and emphasize the government's view of what happened, to the defendants' unfair disadvantage," Defendants may raise those concerns on cross-examination.  *See Linde v. Arab Bank, PLC*, 922 F.Supp.2d 316, 333 (E.D.N.Y. 2013) (Gershon, J.) ("So long as [the witness's] testimony accurately describes the limits of his analysis, defendant will be able to explore the scope of his work on cross-examination, present its own summary of the evidence it considers relevant, and direct the jury's attention to other evidence in the record."); *Fagiola v. Nat'l Gypsum Co. AC & S., Inc.*, 906 F.2d 53, 58 (2d Cir. 1990) ("In sum, the objections that [the witness's] summary did not fairly represent the documents and was excessively confusing and misleading go more to its weight than to its admissibility.").

For the foregoing reasons, the Court admits the video surveillance compilation given the Government complies with Rule 1006 and ensures any written time stamps, locations, or maps are in the evidentiary record as it has represented.  The Court also permits the use of illustrative aids.  To the extent Defendants believe the video surveillance compilation or illustrative aids are inadmissible for any reasons not discussed here, they may raise such objections at trial.

## VII.  MOTION TO PRECLUDE EVIDENCE INTRODUCED BY DEFENDANTS SEEKING TO ELICIT SYMPATHY OR RELATING TO POSSIBLE PUNISHMENT OR COLLATERAL CONSEQUENCES

The Government moves to preclude Defendants from "commenting on, introducing or eliciting any evidence that seeks to elicit sympathy from the jury including, but not limited to, evidence concerning the defendants' personal, health, or family circumstances, or evidence of

the defendants' good character through specific instances of conduct." First MIL at 60. The Government also seeks to preclude mention of any "consequences of their convictions at trial." *Id.* at 61.

Villanueva does not take a position on these motions. Villanueva's Opp. Br. at 2. Rodriguez has represented he "has no present intention of introducing evidence or argument about sympathy for the defendants or potential punishment or collateral consequences." Rodriguez's Opp. Br. at 23. However, Rodriguez argues the Government's motion is premature given there may be circumstances when introduction of such evidence is appropriate, such as if "the government or one of its witnesses suggests or implies that the defendants faces [sic] minimal or insignificant consequences." *Id.*

Rodriguez only opposes the motion on the grounds it is premature and overbroad. Given the evidence may be admissible in certain instances, the Court grants the Government's motion to the extent it seeks to preclude references to evidence seeking to elicit sympathy or relating to possible punishment or collateral consequences during opening statements. However, Defendants may later move to admit such evidence in the event the Government opens the door to the issue at trial, or if another situation is presented at trial justifying the introduction of such evidence.

## VIII.  MOTION PERMITTING THE GOVERNMENT TO RECALL WITNESSES

The Government seeks permission to recall certain law enforcement witnesses throughout trial to effectively group evidence regarding the separate October 10th and November 1st shootings. First MIL at 62.

26

Villanueva takes no position on the motion. Villanueva's Opp. Br. at 2. Rodriguez defers taking a position until the Government identifies the witnesses and subjects of their testimony. Rodriguez's Opp. Br. at 23–24.

The Court has the discretion to determine exceptions to the normal order of presenting evidence. *United States v. DiNapoli*, 557 F.2d 962, 965 (2d Cir. 1977); Fed R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence[.]"); *United States v. Guerrero*, 882 F.Supp.2d 463, 483–84 (S.D.N.Y. 2011) (Sweet, J.). Exercising this discretion, the Court grants the Government's motion.

## IX.    MOTION FOR DISCLOSURE OF DISCOVERY MATERIALS

The Government has moved for this Court to issue an order requiring Defendants to "identify any defense exhibits they intend to introduce during the government's case (but not those documents to be used for impeachment purposes only) or any defense case by February 13, 2026; (ii) both parties to exchange simultaneously Rule 26.2 materials by an agreed-upon date or, if necessary, a date set by the Court; and (iii) the parties to exchange demonstratives, which should not include exhibits, to be used during opening statements by February 19, 2026." Gov't Reply Br. at 12. The Government clarified it is not seeking exhibits Defendants are using solely to impeach government witnesses. *Id.*

Neither Rodriguez nor Villanueva object to the second and third category of discovery materials requested. Rodriguez's Opp. Br. at 25; Villanueva's Opp. Br. at 13. Thus, there is no dispute between the parties on this issue.

Accordingly the Court grants the Government's motion and, to the extent they have not done so already: (1) Defendants must identify any defense exhibits they intend to introduce during the government's case (but not those documents to be used for impeachment purposes

27

only) or any defense case; (2) both parties must exchange Rule 26.2 materials; and (3) the parties must exchange demonstratives to be used during opening statements. Given trial in the above-captioned action is scheduled to commence on Monday, March 2, 2026, the Court directs the parties, to the extent they have not done so already, to exchange the above materials on or before Monday, March 2, 2026, at 5:00 P.M.

## X.    MOTION TO ADMIT VIDEOS AND PHOTOGRAPHS OBTAINED FROM VILLANUEVA'S CELLPHONE

The Government seeks to admit numerous videos and photographs obtained from Villanueva's cellphone. *See* Government's Opening Brief in Support of Second Motion in Limine (the "Second MIL") at 1–2, ECF No. 159. Specifically, these materials consist of:

- Multiple several-second videos of the defendant holding up gang signs signifying membership in 18th Street, including at various locations appearing to be in and around New York City. *Id.* at 2;
- Multiple several-second videos of the defendant wearing 18th Street colors in locations in New York City, such as on the Staten Island Ferry. *Id.*;
- An image depicting two armed men holding 18th Street gang signs with the caption, "Eighteen Street Orale Carnal[.]" *Id.*; and
- Multiple photographs of nearly-naked women appearing to be advertise prostitution, including with captions such "Open" and "Abierto," which means "open" in Spanish, as well as the below text. *Id.*

 60$,

The Government concedes these materials, as far as it can determine, were created "on or about and between" 2024 and 2025.[12] Gov't Second Reply Br. At 1.

Rodriguez has not moved to oppose the Second MIL. However, Villanueva has raised objections pursuant to Rules 404(b) and 403. *See* Villanueva's Brief in Opposition to Government's Second Motion in Limine at 2, 4 ("Villanueva's Second Opp Br."), ECF No. 167.

---

[12] The Government states it is "unable to determine with certainty the dates on which the photographs were created." Gov't Second Reply Br. At 1.

For the reasons discussed below, the Court grants the Government's motion to admit the proffered evidence.

## A.    Legal Standards

The same legal standards outlined above with respect to the admission of the racketeering evidence under Rule 404(b) applies here. *See supra* at 3–5. With respect to evidence of uncharged offenses or other acts occurring *subsequent to* the charged offense, the Second Circuit held there is no *per se* bar to admission of subsequent acts under Rule 404(b). *See United States v. Rutkoske*, 506 F.3d 170, 177–78 (2d Cir. 2007). Similarly, the Second Circuit has refused to "adopt a *per se* rule that subsequent similar act evidence inherently lacks relevancy[.]." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) (emphasis in original); *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) ("The fact that the evidence involved a subsequent rather than prior act is of no moment."). The principles discussed above regarding Rule 403 apply with equal force to this issue, as well. *See supra* at 5.

## B.    Application

Putting aside for the moment the evidence at issue post-dates the charged offenses by multiple years, *see* Villanueva's Second Opp. Br. at 3; Gov't Second Reply Br. at 1, the evidence the Government proffers would be admissible as either direct evidence of the existence of an enterprise or evidence of a pattern of racketeering. *See supra* at 3–5. The proffered evidence largely concerns 18th Street associations, including individuals holding up 18th Street gang signs, shirts with colors associated with 18th Street,[13] and prostitution activities reflecting one of the illicit activities the Government intends to link to 18th Street through other evidence at trial.

---

[13] Villanueva contends the colors of the clothing are so exceedingly common as to have no bearing on a connection to 18th Street. *See* Villanueva's Second Opp. Br. at 3. First, this ignores the shirts depict the number "81" which the Government intends to show is used by 18th Street members to reflect their association with the gang. Government's Second Reply Brief ("Gov't Second Reply Br.") at 2, ECF No.

29

However, the Court does not agree evidence from four to five years after the charged offenses demonstrates the existence of an enterprise or a pattern of racketeering nearly half a decade earlier. Further, the Government does not identify any cases finding such evidence admissible as direct evidence of RICO offenses. However, even assuming, *arguendo*, the proffered photographs and videos are not direct evidence due to their lack of temporal proximity, the evidence would still be admissible under Rule 404(b).

The Government proffers permissive uses of the evidence under Rule 404(b), including to show identity, knowledge, intent, and motive. Second MIL at 4. The fact this evidence post-dates the charged offenses does not change the outcome. Indeed, the Second Circuit in *Rutkoske* affirmed the admission of evidence tending to show the existence of a stock manipulation scheme which occurred four years after the scheme the defendant was charged with committing because it was used for other proper purposes under Rule 404(b). *Rutkoske*, 506 F.3d at 174, 178.

To the extent the Government intends to introduce the proffered evidence for the purposes it outlined under Rule 404(b), the Court admits the evidence. The Court will issue a limiting instruction directing the jury to consider the evidence only for the purpose of evaluating Villanueva's identity, knowledge, intent, and motive.

The Court also rejects any argument that the proffered evidence is precluded under Rule 403. Given the evidence at issue does not involve conduct any more sensational, disturbing, or

---

187. Second, at most, Villanueva's contention is an issue for cross-examination where he can present his competing theory of what the evidence represents. The same is true of Villanueva's argument that he may have kept the images of purported prostitution for his own "titillation." Villanueva's Second Opp. Br. at 3. Just because Villanueva disagrees with the characterization of the evidence does not make it irrelevant. *See Belvin*, 635 F.Supp.3d at 197 (noting bar for relevance is very low).

inflammatory than the murder Villanueva is charged with committing, it is not precluded under Rule 403. *See Baez*, 349 F.3d at 94.

## XI.   MOTION TO PRECLUDE CROSS-EXAMINATION OF WITNESSES REGARDING CERTAIN SUBJECTS

Finally, the Government moves to preclude cross-examination of law enforcement and civilian witnesses regarding specific subjects. With respect to law enforcement witnesses, the Government moves to preclude cross-examination concerning administrative findings by the New York City Civilian Complaint Review Board ("CCRB") and the New York City Internal Affairs Bureau ("IAB"), as well as unproven allegations in civil lawsuits. *See* Government's Second Giglio Letter ("Second Giglio Ltr.") at 3, ECF No. 178. With respect to civilian witnesses, the Government moves to preclude cross-examination concerning prior convictions. *See* Government's Third Giglio Letter ("Third Giglio Ltr.") at 4, ECF No. 186.

Neither Rodriguez nor Villanueva have filed an opposition to the Government's motions to preclude. The Court grants the Government's motions.

### A.   Legal Standards

A district court is "accorded broad discretion in controlling the scope and extent of cross-examination[.]" *United States v. Wilkerson*, 361 F.3d 717, 734 (2d Cir. 2004) (citing *United States v. Fabian*, 312 F.3d 550, 558 (2d Cir. 2002)). Accordingly, a court's decision to limit cross-examination is subject to an abuse-of-discretion standard. *United States v. Horsford*, 422 Fed.Appx. 29, 30 (2d Cir. 2011) (summary order).

Rule 608 imposes certain limitations on introducing evidence regarding a witness's character for truthfulness or untruthfulness. *See* Fed R. Evid. 608. Specifically, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed R. Evid. 608(b); *see United States v.*

31

*Nelson*, 365 F.Supp.2d 381, 389 (S.D.N.Y. 2005) (Marrero, J.) (noting extrinsic evidence encompasses documentary evidence). However, on cross-examination, a court may allow inquiry into such specific instances if they are probative of the character for truthfulness or untruthfulness of either "the witness[] or another witness whose character the witness being cross-examined has testified about." Fed R. Evid. 608(b).

Numerous courts in this circuit have applied Rule 608 to administrative findings and civil lawsuits. For example, in *Horsford*, the Second Circuit affirmed the district court's decision to restrict testimony regarding a prior CCRB complaint against an officer because the complaint "involved no dishonesty." 422 Fed.Appx at 30; *see also United States v. Barrett*, 10-CR-809, 2012 WL 194992, at *2 (E.D.N.Y. Jan. 23, 2012) (Matsumoto, J.) (collecting cases). With respect to civil litigation, courts have excluded testimony regarding pending civil suits and suits which have "ended in settlement without any admission of wrongdoing by the defendant or adverse credibility finding by the court." *United States v. Jackson*, 19-CR-356, 2020 WL 6558215, at *3 (E.D.N.Y. Nov. 9, 2020) (Ross, J.); *see also United States v. Clanton*, 763 F.Supp.3d 261, 270 (E.D.N.Y. 2025) (Matsumoto, J).

Separately, Rule 609 governs when criminal convictions are admissible to attack a witness's character for truthfulness or untruthfulness. *See* Fed. R. Evid. 609. For convictions greater than ten years old, a court must engage in what is effectively a "Reverse-Rule 403" balancing test requiring the conviction's "probative value, supported by specific facts and circumstances, [to] substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1); *Zinman v. Black & Decker, Inc.*, 983 F.2d 431, 434 (2d Cir.1993) ("We have recognized that Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances.") (internal quotation marks omitted).

32

## B.    Application

The Court finds the proffered administrative findings, civil lawsuits, and convictions are inadmissible at trial.

The Court has reviewed the administrative findings, *see* Second Giglio Ltr. at 4–8, and finds none of them bear on the officers' credibility or character for truthfulness. Specifically, the administrative findings concerned incidents such as an officer's court non-appearance, a physical altercation between an officer and another individual, missing property claims, and use of official law enforcement databases for personal reasons. *Id.* at 4, 6. All of the civil lawsuits are either pending or were settled without credibility determinations. *See id.* at 4–8. For these reasons, the Court grants the Government's motion to preclude with respect to the law enforcement witnesses.[14]

The criminal convictions concerning the civilian witnesses who intend to testify are also inadmissible under Rule 609. Two of the three convictions are greater than ten years old, *see* Third Giglio Ltr. at 4, requiring the Court to analyze the probative and prejudicial value of the convictions under a Reverse-Rule 403 analysis. Applying this balancing test, the Court finds the convictions' probative value does not substantially outweigh their prejudicial value. The criminal convictions concern a forcible touching and violation of a vehicle traffic law, *id.*, both

---

[14] The Government has also previously moved to preclude cross-examination of certain other law enforcement officers regarding administrative findings and civil lawsuits. *See* Government's First Giglio Letter ("First Giglio Ltr.") at 3–6, ECF No. 152. The Government's motion to preclude was submitted in connection with a suppression hearing at which the law enforcement officers intended to testify (one of the officers ended up testifying at this hearing). *See id.* at 3 ("The government discloses, and moves to preclude cross-examination relating to, the following administrative findings and civil lawsuits against certain law enforcement witnesses the government anticipates calling at **the suppression hearing**") (emphasis added). It is unclear whether the Government intended its motion to apply equally with respect to testimony elicited at trial. In any event, the Court has reviewed the administrative findings and civil lawsuits described in the First Giglio Letter and finds they would also be inadmissible for the purpose of attacking the officers' character for truthfulness.

33

of which have minimal-to-no probative value regarding the character for truthfulness. Moreover, one of these convictions is not punishable by death or imprisonment for more than one year, nor does it involve a dishonest act or false statement, and so Rule 609 does not permit its introduction. *See* Fed. R. Evid. 609(a). The third conviction, although not greater than ten years old, does not fall within the purview of Rule 609. The conviction was for a traffic violation not punishable by death or imprisonment for one year and did not involve a dishonest act or false statement. *See id.*; Third Giglio Ltr. at 4.

The Court therefore grants the Government's motion to preclude examination on the administrative findings, civil lawsuits, and prior criminal convictions.

## XII.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** the Government's motions and **DENIES IN PART** the Government's Motions

SO ORDERED

## s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:  February 27, 2026
        Brooklyn, New York

34